# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
19-1031
UNPUBLISHED

| | |
|---|---|
| BILINDA ANDERSON,<br><br>      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>      Respondent. | Chief Special Master Corcoran<br><br>Filed: September 13, 2022<br><br>Special Processing Unit (SPU);<br>Findings of Fact; Onset; Influenza<br>(Flu); Shoulder Injury Related to<br>Vaccine Administration (SIRVA) |

*Maximillian J. Muller*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Alexa Roggenkamp*, U.S. Department of Justice, Washington, DC, for Respondent.

## FINDINGS OF FACT[1]

On July 17, 2019, Bilinda Anderson filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq*.[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine administered on September 12, 2017. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this unpublished fact ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the fact ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons discussed below, I find the onset of Petitioner's shoulder pain occurred within 48 hours of vaccination, consistent with the Table requirements for a SIRVA claim.

## I.     Relevant Procedural History

As noted above, the case was initiated in July 2019. Despite attempts to informally resolve this case, the parties reached an impasse in May 2021. ECF No. 31. On June 29, 2021, Respondent filed his Rule 4(c) Report recommending that entitlement to compensation be denied under the terms of the Vaccine Act. ECF No. 32. Among other things, Respondent argued that "[P]etitioner's contemporaneous medical records do not support a finding that her left shoulder pain began within 48 hours of vaccination." *Id.* at 7.

In a Scheduling Order filed on August 12, 2021, I expressed the tentative view that based on review of the existing record, a hearing would not be necessary, and that I could instead issue a fact finding as to the onset of Petitioner's injury based on the record. ECF No. 33. Petitioner thereafter filed a brief on September 15, 2021, contending that she had met her burden of proof for a Table SIRVA. ECF No. 34 ("Motion"). On October 15, 2021, Respondent opposed entitlement, maintaining the position that this case should be dismissed. ECF No. 35 ("Response"). This matter is now ripe for resolution.

## II.    Issue

At issue is whether the onset of Petitioner's left shoulder pain occurred within 48-hours after vaccination, as set forth in the Vaccine Injury Table for a SIRVA injury after receipt of the flu vaccine. 42 C.F.R. § 100.3(a) XIV.B. (2017) (influenza vaccination). The Table's "Qualifications and Aids to Interpretation" ("QAI") for a SIRVA-based claim also require that a petitioner's pain have occurred within this same 48-hour time frame. 42 C.F.R. § 100.3(c)(10).

## III.   Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). I have discussed the factors to be considered in determining whether a petitioner has met their burden in several recent decisions. I fully adopt and hereby incorporate my prior discussion in section III of the following decisions: *Marrow v. Sec'y of Health & Hum. Servs.*, No. 17-1964V, 2020 WL 3639775 (Fed. Cl. Spec. Mstr. June 2, 2020); *Robinson v. Sec'y of Health & Hum. Servs.*, No. 17-1050V, 2020 WL 3729432

(Fed. Cl. Spec. Mstr. June 5, 2020); *Decoursey v. Sec'y of Health & Hum. Servs.*, No.18-870V, 2020 WL 4673228 (Fed. Cl. Spec. Mstr. July 9, 2020).

In sum, a special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of the petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). Moreover, a special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

## IV.     Finding of Fact

I make the following finding regarding onset after a complete review of the record to include Petitioner's affidavit, all medical records, Respondent's Rule 4 report, and briefing by the parties. Specifically, I base the findings on the following evidence:

- Petitioner received the flu vaccine on September 12, 2017. Ex. 1 at 117-118; Ex. 3. It was administered in her left deltoid by Dr. Lauren Kay Rabin Blair, Petitioner's obstetrician-gynecologist. Ex. 1 at 118.

- Petitioner presented to Dr. Blair approximately two weeks later - on September 27, 2017 - for an endometrial biopsy. Ex. 1 at 133-135. There is no indication that Petitioner complained of left shoulder pain during this appointment.

- In her affidavit, signed on July 1, 2019, Petitioner avers that she experienced immediate pain after receiving the vaccine at issue. Ex. 2 at 1. Petitioner further avers that she "asked about the soreness in my shoulder" during her September 27th appointment with Dr. Blair, but was told to consult with her primary care provider if her symptoms continued for longer than 30 days. *Id.*

- On November 17, 2017 (now 66 days post-vaccination), Petitioner sent an email to her primary care provider ("PCP"), Dr. Oluwakemi Abosede Ajide, concerning left shoulder pain. Ex. 1 at 147. Petitioner explained that she received a flu shot on September 12, 2017, and that although she had been "waiting for the soreness to go away . . . it's only gotten worse." *Id.*

- Petitioner presented to Dr. Ajide on December 14, 2017, concerning left shoulder pain and limited range of motion. Ex. 1 at 155-157. Petitioner reported that she

3

continued to have soreness at the injection site of her September 12, 2017 flu shot. *Id.* at 156.

- Petitioner attended her first physical therapy appointment on December 14, 2017. Ex. 1 at 164-169. The note documenting this appointment indicates that Petitioner started having lateral pain "after a flu shot that began weeks ago." *Id.* at 166.

- On January 9, 2018, Petitioner presented to orthopedist Dr. Gurminder Singh Ahuja, MD. Ex. 1 at 192. Dr. Ahuja noted that Petitioner "[m]entions to me that after she received her [f]lu shot in September, [she] started having lateral shoulder pain." *Id.* at 193.

- In a January 30, 2018 email to Dr. Ajide, Petitioner reported that "[b]efore I got this vaccination of the flu shot I have [sic] free range of motion [and] no pain in my shoulder . . .  then after the flu shot[,] I begin [sic] having problems moving my shoulder almost immediately [.]" Ex. 1 at 205.

- Petitioner presented to Dr. Melissa Sinkiewicz on February 1, 2018, concerning her left shoulder pain. Ex. 1 at 223-227. The note documenting this visit indicates that Petitioner's symptoms "began in Sept 2017 after getting her flu vaccination and she feels like it has become worse over time." *Id.* at 224.

Overall, although the evidence offered in support of Petitioner's onset allegation is not extensive, I find that the totality of the record supports the conclusion that Petitioner's shoulder pain most likely began within 48 hours of receiving the September 12, 2017 flu vaccine. While Petitioner's medical records do not reflect a precise date of onset and include vague temporal references (e.g., "*after* the flu shot. . ." (emphasis added)), on at least two occasions during the fall of 2017 she reported that her pain had begun in September 2017. *See, e.g.,* Ex. 1 at 193, 224. Moreover, in one instance, Petitioner described "having problems moving my shoulder almost immediately" after the flu shot. Ex. 1 at 205. This history is further supported by Petitioner's own declaration which describes the onset of her condition in greater detail.

Admittedly, there is evidence of an intervening gynecological appointment with Dr. Blair (occurring only fifteen days post-vaccination) at which time Petitioner made no mention of her shoulder injury or its purported onset. Ex. 1 at 133-135. Although Petitioner attests that she did mention her shoulder pain at this visit, the record itself is silent on the issue. Respondent acknowledges that it is not always reasonable to assume that a claimant would report - and that a physician would document - all of a patient's concerns. Response at 6. But Respondent nevertheless contends that "it is reasonable that when [Petitioner] returned for treatment from her OB-Gyn fifteen days [after receiving the flu shot], [P]etitioner would mention, and that her provider would note, any ailments

4

stemming from a vaccine that was administered by *that provider* a few days earlier." Response at 6-7 (citing Ex. 1 at 133-35).

This assertion has some persuasive force. But a single intervening medical encounter is not enough to *disprove* onset, especially given the consistent assertions about close-in-time onset at all *subsequent* medical encounters. And although it is reasonable to expect a person suffering from a recent shoulder injury to raise the matter at a general physical exam, a medical visit with a specialized purpose is different (and indeed – in this case, Petitioner has persuasively explained that her Ob-Gyn expressly directed her to raise the issue with her PCP at a later date).

In addition, the time gap from alleged onset to efforts at treatment - a 66-day delay – is not of sufficient magnitude to call into question Petitioner's onset allegations. Petitioner's medical records and affidavits reflect a pattern similar to other SIRVA claims, in which injured parties reasonably delay treatment, often based on the assumption that their pain is likely transitory. *See, e.g., Tenneson v. Sec'y of Health & Human Servs*., No. 16-1664V, 2018 WL 3083140, at *5 (Fed. Cl. Spec. Mstr. Mar. 30, 2018), *mot. for rev. denied,* 142 Fed. Cl. 329 (2019) (finding a 48-hour onset of shoulder pain despite a nearly six-month delay in seeking treatment); *Williams v. Sec'y of Health & Human Servs*., No. 17-830V, 2019 WL 1040410, at *9 (Fed. Cl. Spec. Mstr. Jan. 31, 2019) (noting a delay in seeking treatment for five-and-a-half months because petitioner underestimated the severity of her shoulder injury); *Knauss v. Sec'y of Health & Human Servs*., 16-1372V, 2018 WL 3432906 (Fed. Cl. Spec. Mstr. May 23, 2018) (noting a three-month delay in seeking treatment). And Petitioner clearly began complaining "on the record" of shoulder pain within two and a half months of vaccination, consistently thereafter relating onset to the vaccination. The overall weight of the evidence is sufficiently supportive of her onset allegations to find in her favor.

Accordingly, I find there is preponderant evidence to establish that the onset Petitioner's left shoulder pain occurred within 48 hours of the September 12, 2017 flu vaccination.

## V.    Scheduling Order

Given my finding of fact regarding onset – and specifically that it is consistent with the Table requirements of a SIRVA claim – Respondent shall evaluate and provide his current position regarding the merits of Petitioner's case.

Respondent shall file, by no later than **Wednesday, October 12, 2022**, a status report indicating whether he intends to defend this matter in any regard other than onset.

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master
